KENNETH VONDERSCHMIDT, APPELLEE AND CROSS-APPELLANT, V.
SUR-GRO AND TRI-STATE INSURANCE CO. OF MINNESOTA,
APPELLANTS AND CROSS-APPELLEES.

635 N.W. 2d 405

Filed September 21, 2001. No. S-00-095.

Darla S. Ideus, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellants.

Jeffry D. Patterson, of Bartle & Geier Law Firm, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Sur-Gro and its workers' compensation insurer, Tri-State Insurance Co. of Minnesota (Tri-State), appealed from an order awarding Kenneth Vonderschmidt permanent partial disability benefits and vocational rehabilitation services. The Nebraska Court of Appeals reversed the judgment of the Workers' Compensation Court review panel and remanded the cause with directions to dismiss. See *Vonderschmidt v. Sur-Gro*, No. A-00-095, 2000 WL 33121860 (Neb. App. Dec. 19, 2000) (not designated for permanent publication). Vonderschmidt filed a petition for further review, which this court granted.

## SCOPE OF REVIEW

█ An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Blizzard v. Chrisman's Cash Register Co.*, 261 Neb. 445, 623 N.W.2d 655 (2001).

## FACTS

Vonderschmidt was employed as a chemical applicator for Sur-Gro from 1990 until he was discharged on July 31, 1997. In November 1996, while operating a dry spreader to apply fertilizer to various fields, Vonderschmidt experienced difficulty operating the spreader's clutch. Vonderschmidt stated that he nearly

had to stand on the clutch pedal to release the clutch. A mechanic eventually checked the clutch and found that it was broken.

During the time that Vonderschmidt operated the defective clutch, 8 to 10 hours per day for 2 to 3 weeks, he experienced pain and swelling in the knee of his left leg, which he used to operate the clutch. His stepdaughter, who is a nurse, advised him to see his doctor.

On November 29, 1996, Vonderschmidt saw his family physician, Dr. Allan Tramp, who determined that Vonderschmidt's knee pain was related to his use of the defective clutch. Dr. Tramp diagnosed Vonderschmidt as suffering from "[o]veruse syndrome with secondary effusion and tendonitis in knee." Dr. Tramp recommended that Vonderschmidt use an anti-inflammatory medication for pain and ice to reduce the swelling. Dr. Tramp did not restrict Vonderschmidt's work activities, and he returned to work. Since Sur-Gro's fall spraying season had ended, Vonderschmidt was not immediately required to use the spreader with the defective clutch.

Between December 1996 and April 1997, Vonderschmidt performed maintenance tasks, repaired equipment, and unloaded fertilizer supplies for the next season. During this time, he experienced pain in his knee if he twisted or bent it more than usual or if he worked on his small farming operation. When the spraying season commenced in April 1997, Vonderschmidt again began operating a spreader with a heavy clutch. The pain in his knee returned and, in fact, worsened.

On June 24, 1997, Vonderschmidt returned to see Dr. Tramp, who noted that the recurring pain in Vonderschmidt's knee was related to renewed operation of a spreader with a clutch. Dr. Tramp diagnosed Vonderschmidt as suffering from "[left] knee acute arthralgia and tendonitis secondary to overuse," and he noted that Vonderschmidt might require an orthopedic referral.

Vonderschmidt was examined by Dr. David Heiser, an orthopedist, on June 30, 1997. Dr. Heiser reviewed x rays and found that Vonderschmidt suffered from "[l]eft knee strain very likely related to overuse." After the first visit, Dr. Heiser directed Vonderschmidt to refrain from operating a vehicle with a heavy clutch. Dr. Heiser also recommended that Vonderschmidt restrict his kneeling, squatting, and climbing. Vonderschmidt

provided Sur-Gro with notice of his work restrictions and was subsequently fired on July 31.

Vonderschmidt returned to Dr. Tramp on August 1, 1997, and was referred to another orthopedist, Dr. Ian Crabb, for a second opinion. Upon examination, Dr. Crabb found mild tenderness in the anterior of Vonderschmidt's left knee with some mild crepitus, but no joint line tenderness. Dr. Crabb stated that the condition should resolve over time. Vonderschmidt testified that Dr. Crabb told him to refrain from driving a vehicle with a heavy clutch.

On January 9, 1998, Vonderschmidt was reexamined by Dr. Tramp. Although Vonderschmidt's knee condition had improved because of decreased physical activity, he continued to experience periodic swelling, aching, discomfort, and stiffness. Dr. Tramp noted that Vonderschmidt would continue to have mild chronic difficulties with his knee and might be restricted as to the type and amount of work he could complete consistently. Dr. Tramp noted that if difficulties continued, he would recommend a followup with an orthopedist.

Vonderschmidt began working as a security guard for a casino in Kansas on February 20, 1998. On May 16, he returned to Dr. Tramp, who found that Vonderschmidt was limited in the type of employment that he could participate in because of increased knee pain upon bending, twisting, or squatting. Repetitive use of a clutch on a truck, tractor, or other equipment would be inappropriate, Dr. Tramp stated.

Dr. Tramp wrote to Vonderschmidt's attorney on July 22, 1998, and stated that Vonderschmidt's condition was stable and permanent and that no major changes were anticipated. Dr. Tramp restricted the types of employment in which Vonderschmidt could engage to those that do not involve repetitive bending, squatting, or extensive walking. Dr. Tramp recommended that Vonderschmidt avoid any repetitive twisting motion or repetitive bending or pressure on the knee because that could cause increased pain, swelling, and dysfunction. Although Dr. Tramp stated that Vonderschmidt had sustained a permanent injury with persistent pain and limitations in his daily activities, Dr. Tramp was unable to report an exact percentage of disability based on weakness or decreased range of motion.

Vonderschmidt was then referred to a third orthopedist, Dr. Richard Brennan, who found that Vonderschmidt had significant impairment of his knee and a 25-percent permanent partial impairment of the left knee. Upon the request of Sur-Gro and Tri-State, Vonderschmidt returned to Dr. Crabb for reevaluation on December 28, 1998. Dr. Crabb found that Vonderschmidt continued to have a problem with his knee which had been contributed to significantly by the use of the defective clutch. As of January 12, 1999, Dr. Crabb noted that Vonderschmidt's knee problem was not likely to improve significantly, and Dr. Crabb gave Vonderschmidt an impairment rating of 10 percent in the left lower extremity.

Vonderschmidt filed his petition with the Workers' Compensation Court on July 17, 1998. He alleged that he had sustained an injury to his left knee on or about November 29, 1996, while employed by Sur-Gro as a chemical applicator. He alleged the injury was caused by repeated trauma to his left knee that resulted from the use of a clutch on equipment owned by Sur-Gro. He claimed that he aggravated the injury on or about June 24, 1997. Sur-Gro and Tri-State denied that the injury arose out of and in the course of Vonderschmidt's employment.

A trial judge of the Workers' Compensation Court found that Vonderschmidt injured his left knee on or about November 29, 1996, while operating a spreader for Sur-Gro. The trial judge found that the injury did not result in any temporary impairment until after the injury recurred on June 24, 1997. As a result of the injury and the recurrence, Vonderschmidt suffered a 25-percent impairment to his left lower extremity, as established by Dr. Brennan.

The trial judge found that Vonderschmidt was not entitled to temporary indemnity benefits, but that he was entitled to payment of $310.67 per week for 53.75 weeks of permanent partial disability. The trial judge also ordered Sur-Gro and Tri-State to pay certain medical bills and mileage incurred for travel to and from medical appointments. Sur-Gro and Tri-State were required to pay future medical expenses reasonably necessary as a result of the accident and injury. The trial judge also found that Vonderschmidt was entitled to vocational rehabilitation services. The trial judge's order did not address attorney fees or

waiting-time penalties as requested in Vonderschmidt's petition. Vonderschmidt sought review by a three-judge panel of the Workers' Compensation Court.

The review panel affirmed the trial judge's order and concluded that waiting-time penalties, costs, and attorney fees should not be awarded in the trial court. Because Sur-Gro and Tri-State had cross-appealed and had failed to obtain a reduction in the amount of the award, the review panel ordered them to pay $500 in attorney fees to Vonderschmidt.

Sur-Gro and Tri-State appealed to the Court of Appeals, and Vonderschmidt cross-appealed. The Court of Appeals held that Vonderschmidt had not suffered a compensable injury as the result of an accident, reversed the Workers' Compensation Court review panel's affirmance of the trial judge's award of benefits, and remanded the cause with directions to dismiss. See *Vonderschmidt v. Sur-Gro*, No. A-00-095, 2000 WL 33121860 (Neb. App. Dec. 19, 2000) (not designated for permanent publication). We granted Vonderschmidt's petition for further review.

## ASSIGNMENTS OF ERROR

In his petition for further review, Vonderschmidt makes the following assignments of error: The Court of Appeals erred (1) in concluding that he did not suffer an accident within the meaning of the Nebraska Workers' Compensation Act; (2) in concluding that reversal was mandated by *Jordan v. Morrill County*, 258 Neb. 380, 603 N.W.2d 411 (1999); and (3) in failing to conclude that no reasonable controversy existed.

## ANALYSIS

The trial judge found that Vonderschmidt had injured his left knee on or about November 29, 1996, while operating a spreader for Sur-Gro but that the injury did not result in any temporary impairment until after the injury recurred on June 24, 1997. The trial judge found that as a result of the injury and the recurrence, Vonderschmidt suffered a 25-percent impairment to his left lower extremity, as established by the medical evidence.

The Court of Appeals concluded that Vonderschmidt did not sustain his burden of proof that he suffered an accident within the meaning of Neb. Rev. Stat. § 48-151(2) (Reissue 1998),

reversed the Workers' Compensation Court review panel's affirmance of the trial judge's award of benefits, and remanded the cause with directions to dismiss. The Court of Appeals opined that Vonderschmidt never discontinued his employment, as required in *Jordan*.

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Blizzard v. Chrisman's Cash Register Co.*, 261 Neb. 445, 623 N.W.2d 655 (2001). In determining whether to affirm, modify, reverse, or set aside a judgment of a Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Jordan v. Morrill County, supra.*

An "accident," as defined by the Nebraska Workers' Compensation Act, is "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." § 48-151(2). The parties do not dispute whether the injury was "unexpected or unforeseen" or whether Vonderschmidt demonstrated "objective symptoms." The disagreement centers on whether the injury occurred "suddenly and violently."

We have long held that the term "suddenly and violently" does not require that an accident occurred "instantaneously and with force." Rather, the element is satisfied if (1) the employee has sustained an injury at an identifiable point in time arising out of and in the course of his or her employment, (2) the employee discontinues employment because of the injury, and (3) the employee seeks medical treatment because of the injury. See *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982). The Court of Appeals reversed the award of benefits because Vonderschmidt did not completely discontinue his employment. The Court of Appeals stated that Vonderschmidt had not proved an accident as defined by § 48-151(2). It opined that *Jordan* required " 'discontinuation of employment' " that was

more than simply the few hours that Vonderschmidt needed for his medical appointments. *Vonderschmidt v. Sur-Gro*, A-00-095, 2000 WL 33121860 at *5 (Neb. App. Dec. 19, 2000) (not designated for permanent publication).

In *Jordan v. Morrill County*, 258 Neb. 380, 603 N.W.2d 411 (1999), we stated that cessation of employment is a requirement regardless of whether the injury arises from an accident or an occupational disease. In either event, the injury must be such that the employee discontinues employment and seeks medical treatment. "[T]he injury must culminate at a point when the employee can no longer perform the required work." *Id.* at 389, 603 N.W.2d at 418.

It appears that there is some confusion with regard to the phrase "discontinuation of employment." In *Jordan*, we stated that "interruption of employment" meant nothing other than "discontinuation of employment." We did not define how long a "discontinuation of employment" must last for an injured employee to receive benefits. The Court of Appeals' determination that "discontinuation of employment" means something more than a few hours needed for medical appointments creates a harsh result that was not intended or required. The controlling factor is not the length of time of any "discontinuation of employment." What is required is that the employee must stop work and seek medical treatment for an injury.

For example, if an employee suffers a repetitive trauma injury but never stops work and never seeks medical treatment, the employee has not established an identifiable point in time when an accident occurred for purposes of defining the second element, "suddenly and violently." If an employee stops work and seeks medical treatment, then the employee has established the identifiable point in time when the injury occurred.

Both accidental injuries and occupational diseases have specific requirements which must be met in order for compensation to be received. *Jordan v. Morrill County, supra.* One requirement is common to both. The injury must result in a disability, and the disability must be such that the employee can no longer perform the work required. *Id.*

After Vonderschmidt experienced difficulty operating the clutch on the spreader, he used ice and heat to reduce the

swelling and pain in his knee. He consulted his family physician on November 29, 1996. He was diagnosed as suffering from "[o]veruse syndrome with secondary effusion and tendonitis in knee" as a result of using the clutch, but Dr. Tramp did not recommend any restriction of Vonderschmidt's work activities.

When the spring spraying season began in April 1997, Vonderschmidt resumed using a spreader with a clutch, and the pain in his left knee recurred and grew worse. When Vonderschmidt returned to Dr. Tramp on June 24, Dr. Tramp stated that the recurring pain in Vonderschmidt's knee was related to renewed use of the clutch at work. Vonderschmidt was diagnosed as suffering from "[left] knee acute arthralgia and tendonitis secondary to overuse." When Vonderschmidt was examined by Dr. Heiser, an orthopedist, it was determined that Vonderschmidt suffered from "[l]eft knee strain very likely related to overuse." Dr. Heiser recommended that Vonderschmidt refrain from operating a vehicle with a heavy clutch and restrict his kneeling, squatting, and climbing. Vonderschmidt was fired after he notified Sur-Gro of his work restrictions.

The record clearly demonstrates that Vonderschmidt missed work to seek medical treatment. On June 24, 1997, he was absent from work to see Dr. Tramp. Vonderschmidt missed 2 hours of work to see Drs. Heiser and Tramp on June 30. On July 12, Vonderschmidt missed 1 hour of work to go to the hospital, and he missed another hour on July 14 to see Dr. Heiser. The law does not establish a minimum amount of time which must be missed from work for medical treatment in order for an employee to be eligible for workers' compensation benefits. The law requires only that the employee stop work and seek medical treatment.

■ Vonderschmidt has established that he sustained a compensable injury as a result of his employment with Sur-Gro. "Discontinuation of employment" by an employee must be such that the employee can indicate an identifiable point in time where he or she had to stop work and seek medical treatment. After Vonderschmidt missed work in November 1996 and sought medical treatment, the injury recurred in June 1997. He again stopped work and sought medical treatment. On June 24, it was established that Vonderschmidt could no longer perform

the work required because he could not operate a spreader with a heavy clutch.

■ The Nebraska Workers' Compensation Act is intended to provide benefits for employees who are injured on the job, and the terms of the act are to be broadly construed to accomplish the beneficent purposes of the act. See *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000). We conclude that the Court of Appeals erred in reversing the Workers' Compensation Court review panel's affirmance of the trial judge's award of benefits because the second element of an accident was satisfied in that Vonderschmidt can identify a point in time when the injury occurred and he sought medical treatment. Therefore, we reverse the decision of the Court of Appeals and remand the cause to that court with directions to affirm the judgment of the Workers' Compensation Court review panel.

Vonderschmidt also assigns as error that the Court of Appeals erred in failing to conclude there was no reasonable controversy regarding his injury. Because the Court of Appeals reversed the judgment of the review panel, it was not required to decide whether Vonderschmidt was entitled to attorney fees and waiting-time penalties, an issue raised in his cross-appeal. Neb. Rev. Stat. § 48-125 (Cum. Supp. 2000) authorizes a 50-percent penalty payment for waiting time involving delinquent payment of compensation and an attorney fee, where there is no reasonable controversy regarding an employee's claim for workers' compensation.

We conclude that a reasonable controversy did exist. Two appellate courts have reached different conclusions as to whether Vonderschmidt suffered a compensable injury. Therefore, no waiting-time penalty is required.

Because we reverse the decision of the Court of Appeals, Vonderschmidt is entitled to attorney fees for proceedings in the Court of Appeals and this court. Section 48-125 provides that if an award is not reduced after the employer files an application for review by an appellate court, the employee shall be allowed a reasonable attorney fee for proceedings in that court. We therefore award Vonderschmidt attorney fees of $2,700 for the services of his attorney in the Court of Appeals and attorney fees of

$2,600 for the services of his attorney in this court, for a total award of $5,300 in attorney fees.

## CONCLUSION

For the reasons set forth herein, the decision of the Court of Appeals is reversed, and the cause is remanded to the Court of Appeals with directions to affirm the judgment of the Workers' Compensation Court review panel. Vonderschmidt is awarded attorney fees as set forth above.

REVERSED AND REMANDED WITH DIRECTIONS.

GERRARD, J., not participating.

MILLER-LERMAN, J., concurring.

I concur and write separately to address the formula stated in *Jordan v. Morrill County*, 258 Neb. 380, 603 N.W.2d 411 (1999). The instant case was tried as an "accident," see Neb. Rev. Stat. § 48-151(2) (Reissue 1998), and the single judge of the Workers' Compensation Court found that an accident and injury had occurred on November 29, 1996. The elements of an accident are "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the same time objective symptoms of an injury." *Id.* At issue in this case is whether an accident had occurred "suddenly and violently" and whether the facts amounting to "suddenly and violently" had been proved by Vonderschmidt, such that the finding by the single judge was not clearly erroneous. See *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000).

In order for an accident to have occurred "suddenly and violently," the following facts must be demonstrated: (1) The worker must have sustained an injury at an identifiable point in time arising out of and in the course of his or her employment, (2) the worker must have discontinued employment because of the injury, and (3) the worker must seek medical treatment because of the injury. See *Jordan v. Morrill County, supra.*

Although there are other fact patterns which could meet the definition of "suddenly and violently," evidence of the foregoing facts will ordinarily meet the definition of "suddenly and violently." Although the foregoing set of facts requires that the worker cease working, no set amount of time from work must be missed. Although the discontinuance of work may be for the

purpose of seeking medical treatment due to an injury, which discontinuance would satisfy the foregoing set of facts, the discontinuance of work due to an injury need not be for the particular purpose of seeking medical treatment.

I agree with the majority that the finding by the single judge of an accident is not clearly erroneous. Therefore, the affirmance of the single judge's decision by the review panel should have been affirmed, rather than reversed, by the Nebraska Court of Appeals.