TRAVIS ARMSTRONG, APPELLANT, V. WATKINS
CONCRETE BLOCK, APPELLEE.
685 N.W.2d 495

Filed August 17, 2004.   No. A-04-026.

Thomas F. Dowd, of Dowd, Dowd & Howard, for appellant.

Joseph W. Grant, of Hotz, Weaver, Flood, Breitkreutz & Grant, for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

## INTRODUCTION

Travis Armstrong appeals the decision of the Nebraska Workers' Compensation Court review panel which affirmed the decision of the Workers' Compensation Court trial judge determining that Armstrong's petition for workers' compensation benefits should be dismissed because there was no expert opinion that Armstrong suffered injury on or about May 11, 2001, in an accident arising out of and in the course of his employment.

## FACTUAL BACKGROUND

Armstrong was initially hired by Watkins Concrete Block (Watkins) in 1994 as a "cuber," but in 2000, he was transferred to Watkins' brickyard. Armstrong alleges that on May 11, 2001, he was helping to load concrete blocks onto a customer's truck when he picked up two blocks and felt a pull on the "left low side" of his back. The blocks weighed between 10 and 15 pounds each. Armstrong claims that the customer had parked "too close," which left Armstrong in an awkward position to load the blocks.

On May 16, 2001, Armstrong went to see Dr. Kent Bohac, a chiropractor, complaining of pain in the lower left side of his back. The "Case History" that Armstrong filled out during his initial trip to Dr. Bohac's office indicates that Armstrong was injured "On the Job." Armstrong visited Dr. Bohac again on May 18, and then did not return until August 17.

On February 8, 2002, Armstrong was involved in a motor vehicle accident in which his vehicle struck a concrete barrier and went into a ditch. Armstrong claims that he only cut his ear and did not injure his back or leg. On February 11, Armstrong

went to see Dr. Brent A. Crouse. Dr. Crouse's "progress note" says that Armstrong was seeking medical attention for his ear, that Armstrong was concerned "about low back pain in the left side which has happened in the last few days as well," and that Armstrong complained of "an ache which radiates down the back of his leg." According to Dr. Crouse, Armstrong awoke on April 16 "with severe left sided low back pain with inability to get up." On June 3, Dr. Douglas J. Long performed surgery on Armstrong to repair a herniated disk. Armstrong returned to work at Watkins on June 27, running a forklift and doing paperwork.

## PROCEDURAL BACKGROUND

On June 3, 2002, Armstrong filed an amended petition in the Nebraska Workers' Compensation Court alleging that "on or about May 11, 2001, [he] sustained a personal injury arising out of and in the course of his employment with [Watkins] in which he sustained a herniation of a lumbar disc as a result of engaging in lifting activities." At trial, after Armstrong rested, he moved to "conform the pleadings to the proof." Armstrong's counsel argued in support of the motion that while the injury's "onset occurred" on May 11, 2001, as alleged in the pleadings, whether the "onset was the result of repetitive trauma or that separate lifting incident on May 11th, that caused the herniation[,] is the determination for the trier of fact." Armstrong's counsel told the court that there was evidence in the record that the trier of fact could find that Armstrong's condition requiring surgery resulted from either "repetitive trauma" or a "single episode."

Watkins' counsel objected to the motion to conform the pleadings to the proof because, he said, he did not understand what Armstrong's counsel was seeking and because the motion was made on the day of trial. The exchange between Armstrong's counsel and the trial judge which followed the motion makes it clear that Armstrong's counsel was not seeking to actually file another amended petition or claim, and we quote his comment: "[The] trier of fact [is] to determine [whether the movant has] come up with another theory[;] then, the pleadings are conformed to whatever that [determination] is, so you don't have a variation between the pleadings and the proof." Armstrong's counsel also stated in this exchange, "[W]ith all of the gray areas

in Workers' Compensation on date of injury, and repetitive trauma, and single episode, from a conservative standpoint, that's why we're making that motion to conform to the proof." The court then asked, "So, what do you want the amendment to say?" and Armstrong's counsel replied, "I'm not amending[; I move n]ot to amend, [but] to conform to the proof." The court denied the motion.

Following the trial, the court entered an order of dismissal because the injury was "not the product of an accident that happened on or about May 11, 2001." Armstrong appealed the trial court's decision to the Nebraska Workers' Compensation Court review panel, which affirmed the trial court's decision without a detailed opinion. Armstrong appeals.

## ASSIGNMENTS OF ERROR

Armstrong asserts, reassigned and restated, that the review panel erred in (1) failing to find that the trial court abused its discretion in refusing to grant his motion to conform the pleadings to the proof, (2) affirming the trial court's finding that there was insufficient evidence to support an injury date of May 11, 2001, (3) affirming the trial court's finding that a repetitive cumulative trauma injury date cannot be established in the absence of expert medical opinion specifically identifying the date thereof, and (4) affirming the failure of the trial court to find the repetitive cumulative trauma date of his accident on the basis of the evidence adduced.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Misek v. CNG Financial*, 265 Neb. 837, 660 N.W.2d 495 (2003). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *McGowan v. Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994).

■ Upon appeal to a Workers' Compensation Court review panel, the findings of fact made by a Workers' Compensation Court trial judge are not to be disturbed unless they are clearly wrong on the evidence or the decision was contrary to law. *Hemmerling v. Happy Cab Co.*, 247 Neb. 919, 530 N.W.2d 916 (1995). As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony. *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994).

■ In analyzing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party, who also receives the benefit of all inferences that may be drawn from the evidence. See *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991).

■ A workers' compensation claimant bears the burden to establish a causal relationship between the claimant's alleged injury and his or her employment. *U S West Communications v. Taborski*, 253 Neb. 770, 572 N.W.2d 81 (1998). The issue in regard to causation of an injury or disability is one for determination by the fact finder, whose findings will not be set aside unless clearly erroneous. *Zessin v. Shanahan Mechanical & Elec.*, 251 Neb. 651, 558 N.W.2d 564 (1997).

## ANALYSIS

*Motion to Conform Pleadings to Proof.*

Armstrong alleges that the trial court abused its discretion in overruling his motion to amend the pleadings to conform to the evidence. However, as earlier recounted, the trial record is clear that his counsel was not seeking leave to actually amend the pleadings. Rather, under the guise of a motion "to conform to the proof," Armstrong's counsel was suggesting that the trial court should determine whether the herniated disk was a product of repetitive trauma or of a specific incident. After denying this motion, the trial court decided the case, writing that the "first issue for the Court to resolve, as set out in the pretrial order, is whether [Armstrong] suffered injury on or about May 11, 2001,

in an accident arising out of and in the course of his employment." The trial court found:

> [Armstrong's] herniated lumbar disc may be the result of repetitive lifting performed at [Watkins], but it is not the product of an accident that happened on or about May 11, 2001. If it happened in August of 2001, and no physician says that it did, the Court believes that such an accident is too remote in time to have occurred "on or about May 11, 2001." The pleadings and pretrial order frame the issue. The Court does not find any expert opinion to the effect that [Armstrong] suffered injury arising out of his employment on or about May 11, 2001, and accordingly finds that [his] petition should be dismissed.

Thus, it appears from the order that the trial court, while acknowledging evidence supporting a repetitive trauma injury, did not decide whether the injury was the result of repetitive trauma, because the court found that the issue was narrowly framed by the pleadings and pretrial order to be whether the injury was the product of an accident that happened on or about May 11, 2001.

While the technical or formal rules of procedure do not bind the compensation court other than as provided in the Nebraska Workers' Compensation Act, see Neb. Rev. Stat. § 48-168(1) (Reissue 1998), it is nevertheless helpful to look to the statute dealing with "conform[ing] the pleadings to the proof," as Armstrong's counsel moved for the trial court to do. But, first, we note that Neb. Rev. Stat. § 48-173 (Reissue 1998) dictates the contents of the plaintiff's petition in a workers' compensation case. Section 48-173 could easily be read as calling only for the minimalist detail required by "notice pleading."

Neb. Rev. Stat. § 25-852 (Reissue 1995), although now repealed with the advent of notice pleading in civil actions, was in effect at the time this action was filed. Section 25-852 allows a party, upon motion, to amend any pleading in a number of situations, including "when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved." The right to amend pleadings rests within the discretion of the trial court, and the allowance of an amendment will not be error unless prejudice results. *Foremost*

*Ins. Co. v. Allied Financial Services, Inc.*, 205 Neb. 153, 286 N.W.2d 740 (1980). Prejudicial error results when a pleading is allowed to be amended where the amendment changes the issues and affects the quantum of proof as to any material fact. *Stephens v. Radium Petroleum Co.*, 250 Neb. 560, 550 N.W.2d 39 (1996).

Armstrong's pleading states that "on or about May 11, 2001, in Omaha, Douglas County, Nebraska[, Armstrong] sustained a personal injury arising out of and in the course of his employment with [Watkins] in which he sustained a herniation of a lumbar disc as a result of engaging in lifting activities." Once Armstrong rested, he moved to amend the pleadings to "conform to the proof" because, in his attorney's view, there was evidence in the record on which the trier of fact could find that "the condition for which he went to surgery was the result of repetitive trauma." Armstrong contended that whether his injury was the result of repetitive trauma or a separate lifting incident on May 11, 2001, was to be determined by the trier of fact. Armstrong did not present the trial court with a specific amendment to the pleadings.

While there are numerous cases citing § 25-852, few are workers' compensation cases. See *Faulhaber v. Roberts Dairy Co.*, 147 Neb. 631, 24 N.W.2d 571 (1946) (workers' compensation case suggesting that § 25-852 applies in workers' compensation cases, despite workers' compensation court's not being bound by rules of formal procedure in situation where plaintiff sought to amend petition between first hearing and rehearing). However, we find no support in any of the decided cases for the notion advanced by Armstrong's counsel that the fact finder, upon a motion to "conform the pleadings to the proof," picks and chooses a rationale for an award of benefits from among those that have some plausible support in the record, rather than the claimant's amending his or her petition to advance another rationale for recovery. The numerous cases under § 25-852 involve an actual amendment by a party—not something done by the court, as Armstrong's counsel proposed to the trial judge. Further, the Nebraska Legislature amended § 25-852 in 1993 to clarify that "a court may permit a party to amend any pleading, process, or proceeding at any time in the furtherance of justice, *but that a court may not make such an amendment on its own initiative*." (Emphasis supplied.)

Introducer's Statement of Intent, L.B. 29, Judiciary Committee, 93d Leg., 1st Sess. (Jan. 26, 1993). In presenting the amendment to the Judiciary Committee, Senator Doug Kristensen noted that prior to the amendment, § 25-852 seemed to indicate that

> the court amends the pleadings and not necessarily the parties. Actually it's the parties' pleadings. . . . What this does is to make sure and to clarify . . . the fact that it is the parties who are requesting the court to do so, and the court is not doing so upon [its] own motion, upon [its] own action. It is actually the parties who are amending their own pleadings.

Judiciary Committee Hearing, L.B. 29, 93d Leg., 1st Sess. 30 (Jan. 27, 1993). Given the procedural posture of the motion, the way it was made and argued to the trial court, and the abundant authority showing that "conform[ing] the pleadings to the proof" involves an actual amendment by the moving party, we find no abuse of discretion by the trial court in denying Armstrong's motion to "conform to the proof."

*Failure of Trial Court to Find Compensable Injury.*

We address Armstrong's other assignments together because they are argued in a blended presentation which, when summarized, asserts that one way or another, either a specific accident in May 2001 was proved, a repetitive trauma injury with an injury onset of May 11 or 16 was proved, or a compensable repetitive trauma injury was established without any need for proof of a specific date of onset. Given that Armstrong's argument on the remaining assignments ranges over considerable ground, we think a logical starting point is to recap Armstrong's work history and the medical evidence.

Armstrong claims that he was helping to load concrete blocks into a customer's truck and that he picked up two blocks at a time and then "felt a pull" in the "left low side of [his] back." However, his testimony was that he worked as a "cuber" for Watkins from 1994 through 2000. During that time, he did "a lot of heavy lifting, a lot of bending, twisting, fast pace." In 2000, he transferred to Watkins' brickyard because he "got tired of lifting all the heavy blocks." While in the brickyard, he still did "bending and stooping" and lifted heavy cement bags. As a cuber

and in the brickyard, he lifted objects weighing more than 100 pounds. Armstrong's supervisor at Watkins testified that when Armstrong came to work at Watkins in 1994, he did not have any physical limitations or restrictions and seemed to be a strong, physically fit young man.

On May 16, 2001, several days after the event of May 11, Armstrong went to see Dr. Bohac, the chiropractor, complaining of "acute [low-back pain]." On the intake form for Dr. Bohac's office, Armstrong indicated that his injury had occurred on the job. Dr. Long, who performed Armstrong's surgery to repair a herniated disk, opined in several letters submitted as exhibits at the hearing that the cause of Armstrong's disk herniation was "a result of his repetitive lifting activities of concrete blocks at Watkins." Dr. Long recognized that Armstrong had been receiving treatment from a chiropractor since May 16. Dr. Long did not state a specific date on which the disk herniation may have occurred, but opined that it did not occur as a result of the motor vehicle accident earlier mentioned herein, because Armstrong had symptoms prior to that accident.

Thus, there was evidence, including expert medical opinion, adduced at trial that Armstrong's injury was the result of repetitive trauma. Had the trial court considered Armstrong's claims under a repetitive trauma theory, it would not have substantially changed Watkins' defense of the claim as a general proposition because repetitive trauma is to be tested under the statutory definition of "accident." See, *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003); *Vonderschmidt v. Sur-Gro*, 262 Neb. 551, 635 N.W.2d 405 (2001); *Schlup v. Auburn Needleworks*, 239 Neb. 854, 479 N.W.2d 440 (1992). These holdings mean that the same statutory language from the Nebraska Workers' Compensation Act is used to determine whether a specific injury has occurred or whether the injury is the result of repetitive trauma. As a result, the defense would not be compromised unless the defendant was without any knowledge before trial of evidence tending to establish that the injury was based on repetitive trauma. But, in this case, examination of the joint pretrial conference memorandum shows disclosure of Dr. Long's letter of July 7, 2002, wherein his opinion that the cause of the injury was repetitive lifting is found.

Therefore, the defense was not compromised by Armstrong's claim at trial that the injury was from repetitive lifting at work.

██ Whether an employee's injury is considered to be an accident or an occupational disease, the employee must meet certain requirements in order to receive compensation for the injury. *Jordan v. Morrill County*, 258 Neb. 380, 603 N.W.2d 411 (1999). The first element of the statutory definition of an accident is that the injury must be "unexpected or unforeseen." The second element is that the accident must happen "suddenly and violently." The third element is that the accident must produce "at the time objective symptoms of an injury." *Id.*, citing *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982).

The first element is satisfied if the cause was of an accidental character or the effect was unexpected or unforeseen, and the third element, that the accident produced objective symptoms, is satisfied if the symptoms manifested themselves according to the natural course of such things without any independent intervening cause. *Jordan v. Morrill County, supra.*

██ The second element requires that the accident happen "suddenly and violently."

> [T]he term "suddenly and violently" does not require that an accident occurred "instantaneously and with force." Rather, the element is satisfied if (1) the employee has sustained an injury at an identifiable point in time arising out of and in the course of his or her employment, (2) the employee discontinues employment because of the injury, and (3) the employee seeks medical treatment because of the injury.

*Vonderschmidt v. Sur-Gro*, 262 Neb. 551, 557, 635 N.W.2d 405, 410 (2001). "If an employee stops work and seeks medical treatment, then the employee has established the identifiable point in time when the injury occurred." *Id.* at 558, 635 N.W.2d at 410. In *Vonderschmidt*, the high court ruled that stopping work to seek medical attention, after which attention the employee returns to work, is sufficient to establish the "identifiable point in time" component of the "suddenly and violently" test. While foretelling our final decision, it appears from the above authority that the trial judge erred in apparently viewing a specific injury case as completely different from a cumulative trauma case, when the core principle has been established by the Nebraska Supreme Court

that whether a cumulative trauma injury has been proved is to be tested under the definition of "accident." Additionally, the trial judge incorrectly ruled that the pleading of a specific injury date of May 11, 2001, precluded his consideration of whether a cumulative trauma injury had been proved. Finally, we find as a matter of law that Armstrong's failure to specifically plead that his injury resulted from repetitive trauma instead of from a single incident is not dispositive of his claim.

In *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 400 N.W.2d 244 (1987), *disapproved on other grounds, Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990), the construction worker plaintiff pleaded a specific incident in her petition. However, her physician's opinion was that her preexisting knee condition (tilted kneecaps having a tendency to dislocate) had been aggravated and that the aggravation " 'could have been caused by an accident such as [the incident when she felt a tear in her knee while lifting I-beams with a coworker] or by the repetitive kneeling and squatting that she was required to do.' " 224 Neb. at 581-82, 400 N.W.2d at 246. The physician further stated that he could not tell " 'which may have caused it.' " *Id.* at 582, 400 N.W.2d at 246.

The Nebraska Supreme Court held that because the employer was not misled by the plaintiff's pleading a specific, single incident as the cause of her injury, instead of cumulative trauma, which the trial court found was the actual cause, the finding was not outside the issues of the case. The *Hayes* court upheld the finding of the workers' compensation court that the plaintiff had suffered an accidental injury arising out of and in the course of employment. While we recognize that *Hayes* was a four-to-three decision, it still remains a precedent whose viability may well be strengthened as the differences between specific injury accidents and cumulative trauma accidents become less and less distinct, as cases such as *Maxson v. Michael Todd & Co.*, 238 Neb. 209, 469 N.W.2d 542 (1991), have been distinguished and disapproved. See *Jordan v. Morrill County*, 258 Neb. 380, 603 N.W.2d 411 (1999).

Similarly to the employer and circumstances in *Hayes*, Watkins was not misled by Armstrong's pleading that he was injured on May 11, 2001, due to a single incident. Watkins was

aware that Dr. Long had opined that Armstrong's injury was a result of repetitive trauma, and certainly, the factual circumstances for developing repetitive trauma injuries are present in jobs like the one Armstrong performed for many years at Watkins. In the final analysis, because the formal procedural and pleading rules do not apply in the Workers' Compensation Court and because *Hayes* does not require specific election between cumulative trauma and specific injury, the trial court erred in limiting its consideration of the evidence to whether the evidence had proved a specific instance of accidental injury on May 11. The trial court should have considered Armstrong's request that an accident by cumulative trauma be considered as proved by the evidence adduced at trial.

Workers' Comp. Ct. R. of Proc. 11(A) (2004) provides:

> All parties are entitled to reasoned decisions which contain findings of fact and conclusions of law based upon the whole record which clearly and concisely state and explain the rationale for the decision so that all interested parties can determine why and how a particular result was reached. The judge shall specify the evidence upon which the judge relies. The decision shall provide the basis for a meaningful appellate review.

Because the trial court failed to provide a reasoned decision as to whether Armstrong's injury was the result of cumulative trauma, we are precluded from providing a meaningful appellate review on the issue. Therefore, we reverse the review panel's decision affirming the trial court's decision to dismiss Armstrong's petition. We remand the cause to the review panel for further remand to the trial court, with directions to reconsider such cause on the record made as to whether Armstrong has proved either a specific injury or a cumulative trauma injury, complying with rule 11 in its decision. We neither express nor suggest any opinion on what that decision should be.

REVERSED AND REMANDED WITH DIRECTIONS.