IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

JURGENS V. JBS SWIFT & CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DAVID M. JURGENS, APPELLANT,

V.

JBS SWIFT & CO., APPELLEE.

Filed September 6, 2016.    No. A-15-1138.

Appeal from the Workers' Compensation Court, THOMAS E. STINE, Judge. Affirmed.

Daniel J. Thayer, of Thayer & Thayer, P.C., L.L.O., for appellant.

Dallas D. Jones and Michael D. Sands, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

MOORE, Chief Judge, and IRWIN and PIRTLE, Judges.

PIRTLE, Judge.

## INTRODUCTION

David M. Jurgens appeals from an order of the Nebraska Workers' Compensation Court finding that he failed to meet his burden of proof to establish that he sustained bilateral carpal tunnel injuries in an accident arising out of and the in the course of his employment with JBS Swift & Co. (JBS Swift), and dismissing his petition. Based on the reasons that follow, we affirm.

## BACKGROUND

On July 17, 2014, Jurgens filed a petition in the Nebraska Workers' Compensation Court against JBS Swift alleging that on May 22, 2013, he sustained a right shoulder injury, and that on November 27, 2013, he sustained bilateral carpal tunnel injuries to his hands. The petition alleged

- 1 -

both injuries were caused by accidents arising out of and in the course of his employment with JBS Swift for which he was entitled to compensation.

Trial on Jurgens' petition was held on October 22, 2015. At the beginning of trial, the parties stipulated that Jurgens had suffered an injury to his right shoulder for which all compensation had been paid and that the right shoulder claim was withdrawn. Accordingly, Jurgens' right shoulder injury is not at issue in this appeal.

The evidence at trial showed that Jurgens started working for JBS Swift in 2009. After three months of cleaning floors, Jurgens transferred to the job of cooler operator. Jurgens testified that his job involves checking the grade of halved cattle carcasses that are hanging on hooks and attached to an overhead moving rail. He manually operates the conveyor rail by pushing buttons to keep it moving and ensuring the carcasses do not pile up. If a carcass is not the right grade, he has to stop the rail and turn a switch for a "kickout rail" to remove the carcass. He then turns the switch back over and starts the rail again. He testified that sometimes he has to push or pull the carcasses to keep the rail moving. Jurgens testified that he deals with about 5,000 halved carcasses per day, each weighing between 900 and 1,000 pounds. He testified that he spends about 60 percent of his day pushing and pulling cattle to keep them moving along the line, and spends 30 percent of his day turning the carcasses to determine their grade. Jurgens testified that he spends 10 to 15 percent of his day operating the buttons that run the moving rail. When he uses the buttons, he grasps them in either his left or right hand and twists them from left to right. He also testified that sometimes he has to press the buttons for three to five minutes at a time.

On October 11, 2013, Jurgens reported to JBS Swift that he incurred an injury while working, specifically an injury to his wrist and thumb and that he had popping and cracking and/or numbness in his fingers. He listed the date of injury as June 11, 2013.

On December 11, 2013, Jurgens sought treatment at JBS Swift's in-house infirmary for a bilateral injury to his hands, specifically pain in his thumb and first two fingers on the right and left hand. Jurgens claimed that the onset of the same was November 23, 2013. He was told to use a carpal tunnel brace at night and at work.

In February 2014, diagnostic testing indicated that Jurgens had bilateral carpal tunnel syndrome. In March 2014, JBS Swift had Jurgens examined by Dr. Morgan LaHolt, an independent medical examiner. LaHolt agreed that Jurgens was suffering from bilateral carpal tunnel syndrome and that he needed surgery. In his evaluation report, LaHolt concluded that there was insufficient evidence to state within a reasonable degree of medical certainty that Jurgens' work place activities were the cause of his carpal tunnel syndrome. He stated that based on the job activities he observed in a video of Jurgens' job, as well as Jurgens' description of his job activities, Jurgens was not performing a significant amount of repetitive wrist movements that would be expected to cause carpal tunnel syndrome, nor was he working with vibratory equipment.

In June and July 2014, Jurgens underwent two carpal tunnel releases, one on his right hand and the other on his left hand. Dr. Michael L. McCarty, the same doctor who performed surgery on Jurgens' shoulder, performed both hand surgeries. Jurgens had a follow-up visit with McCarty in August 2014, and he was healing appropriately.

Jurgens was next seen by Dr. Thomas P. Ferlic in April 2015 because McCarty had passed away. In his office notes, Ferlic stated that Jurgens had returned to a fairly physical job working

in the cooler for JBS Swift as a cattle pusher and puller. Ferlic also stated that Jurgens had been doing this job for about five years. Ferlic further remarked that Jurgens had returned to his work activities with some continued numbness, and that he could be safely rated for an impairment.

In a letter to Jurgens' attorney dated May 1, 2015, outlining his opinions concerning causation of Jurgens' injuries, Ferlic stated:

> I have reviewed Mr. Jurgens' chart. I have reviewed his occupational stresses. The patient has had symptoms of carpal tunnel syndrome. He has had his carpal tunnels released. I believe that the patient has work-related carpal tunnel injuries. . . I believe, with a reasonable degree of medical certainty, that the patient's occupation was the cause of his carpal tunnel syndrome. If he did have any mild carpal tunnel syndrome prior to this time, his occupation certainly exacerbated it.

Jurgens' attorney followed up with a letter to Ferlic asking him if Jurgens' bilateral hand injury was consistent with a November 17, 2013, date of accident and Ferlic simply marked "yes."

JBS Swift offered the deposition testimony of LaHolt. He testified that based upon research studies and medical literature on the risk factors and causes of carpal tunnel syndrome, he did not see any occupational risk factors for carpal tunnel syndrome in Jurgens' job. He further testified that he did not feel that any of Jurgens' specific work activities were a factor in his development of carpal tunnel syndrome.

The evidence also contains a letter from LaHolt to JBS Swift's attorney dated April 17, 2015, in which LaHolt stated that after reviewing the work activities of a cooler operator depicted on two videos provided by JBS Swift, he was still of the opinion that Jurgens' carpal tunnel syndrome was not secondary to workplace activities. He further explained that Jurgens does not appear to perform any forceful pinching or gripping and his job activities do not appear to be overly repetitive. He concluded that Jurgens' job activities are not the cause of his bilateral carpal tunnel syndrome.

Following trial, the court found that Jurgens had failed to sustain his burden of proof to establish that he sustained bilateral carpal tunnel injuries while employed by JBS Swift, and dismissed Jurgens' petition with prejudice. The court stated that when evaluating Ferlic's opinion against the entire medical record, it was not persuaded that Ferlic's opinion satisfied Jurgens' burden to establish by expert medical opinion a causal connection between Jurgens' carpal tunnel syndrome and his work activities.

In its order, the compensation court discussed Ferlic's May 1, 2015 letter outlining his opinions as to the cause of Jurgens' bilateral carpal tunnel. It stated that it could only guess that the "chart" that was reviewed by Ferlic was Ferlic's own office record of April 29, 2015. With respect to Ferlic's statements that Jurgens "has work-related carpal tunnel injuries," and that "the patient's occupation was the cause of his carpal tunnel syndrome," the court stated that there was nothing in the record to indicate that the work-related carpal tunnel injuries were caused by Jurgens' work with JBS Swift. The court reasoned that it could be that Jurgens had work-related carpal tunnel syndrome from some other employment. The court also stated that the credibility of Ferlic's opinion was effected by the fact that Ferlic provided an opinion that Jurgens sustained his

injuries seven months prior to when the records indicate he can establish a date of injury. The court determined that Jurgens' date of injury was when he was off work for the carpal tunnel surgeries in June and July 2014, yet Ferlic opined that his date of injury was November 17, 2013.

## ASSIGNMENTS OF ERROR

Jurgens assigns that the workers' compensation court erred in (1) finding that he had failed to meet his burden of proof to establish that his bilateral carpal tunnel syndrome was caused by his employment with JBS Swift, (2) finding that the record does not support an accident date of November 23, 2013, for his bilateral carpal tunnel syndrome, (3) finding that Ferlic lacked a factual basis for his opinion, (4) finding that Ferlic may have been referring to some occupation other than Jurgens' employment with JBS Swift when he opined that Jurgens' carpal tunnel was caused by his "occupation;" (5) finding that Ferlic was referring to his own medical notes when he referenced reviewing Jurgens' "chart" in rendering his causation opinion, (6) finding that Ferlic's credibility was questionable because he provided an opinion that Jurgens sustained his injuries seven months prior to when the records indicate he can establish a date of injury, and (7) dismissing Jurgens' petition.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Gardner v. International Paper Destruction & Recycling*, 291 Neb. 415, 865 N.W.2d 371 (2015). See Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014).

On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Gardner v. International Paper Destruction & Recycling, supra.*

If the record contains evidence to substantiate the factual conclusions reached by the trial judge, an appellate court is precluded from substituting its view of the facts for the compensation court. *Clark v. Alegent Health Nebraska*, 285 Neb. 60, 825 N.W.2d 195 (2013).

## ANALYSIS

Jurgens first assigns that the workers' compensation court erred in finding that he had failed to meet his burden of proof to establish that his bilateral carpal tunnel syndrome was caused by his employment with JBS Swift. In connection with this assignment, he also assigns several errors related to the court's findings in regard to Ferlic's causation opinion. We will address all of Jurgens' assignments of error related to causation together.

A workers' compensation claimant bears the burden of establishing a causal relationship between the alleged injuries and his or her employment. *Armstrong v. Watkins Concrete Block*, 12 Neb. App. 729, 685 N.W.2d 495 (2004). Unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert opinion to establish the causal relationship between

the employment and the injury or disability. *Potter v. McCulla*, 288 Neb. 741, 851 N.W.2d 94 (2014). The issue of causation of an injury or disability is one for determination by the trier of fact. *Id.*

Ferlic's opinion was the only expert medical opinion relied on by Jurgens to establish the causative link between Jurgens' employment with JBS Swift and his carpal tunnel syndrome. The court was not persuaded by Ferlic's opinion, and found that Ferlic's opinions did not provide the causal relationship linking Jurgens' employment with JBS Swift to his carpal tunnel syndrome.

Ferlic's office notes indicate that after Jurgens' carpal tunnel releases, Jurgens returned to a fairly physical job working in the cooler as a cattle pusher and puller. As the compensation court noted, Ferlic's notes do not discuss the physical requirements of Ferlic's job specifically related to Jurgens' hand and arm movements. Further, there is no discussion as to the cause of Jurgens' carpal tunnel syndrome or any work activities that may have caused the injury. In fact, there is nothing in the office notes in regard to the cause of Jurgens' carpal tunnel syndrome.

In Ferlic's May 1, 2015 letter to Jurgens' attorney, he provides an opinion as to causation, but it is unexplained. He states that he has reviewed Jurgens' chart and his occupational stresses, and he believed that Jurgens has work-related carpal tunnel syndrome. He does not state what he actually reviewed as to Jurgens' "chart," and does not set out or explain what is meant by occupational stresses. Ferlic gave a causation opinion, with little or no explanation for the basis of his opinion. There is nothing to provide a factual basis to say that Jurgens' work-related activities caused his injury.

The compensation court rejected the opinion of Ferlic for various reasons, as set forth above. The workers' compensation court is the sole judge of the credibility and weight to be given to medical opinions. *Damme v. Pike Enterprises, Inc.*, 289 Neb. 620, 856 N.W.2d 422 (2014). The compensation court is not required to take an expert's opinion as binding and may, as any other trier of fact, either accept or reject such an opinion. *Brandt v. Leon Plastics, Inc.*, 240 Neb. 517, 483 N.W.2d 523 (1992). The compensation court did not find Ferlic's opinion credible, as it was entitled to do and, thus, did not give weight to his causation opinion.

In rejecting Ferlic's opinion and determining that Jurgens did not prove causation, the court also considered the expert opinion of LaHolt offered by JBS Swift, as well as the rest of the evidence in the record. LaHolt opined that Jurgens' bilateral carpal tunnel syndrome was not causally related to his employment. The court stated that it balanced Ferlic's opinion against the factual and medical evidence in the record, and found that after review of the entire record, the greater weight of the evidence supported a finding that Ferlic's opinions were insufficient and lacked the appropriate factual basis to support a finding that Jurgens sustained carpal tunnel syndrome as a result of his work-related activities with JBS Swift.

An appellate court is required to determine whether the evidence was sufficient to support the single judge's decision, not whether the judge could reasonably have decided differently. *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 161 (2013). We conclude that the compensation court weighed and balanced the opinions of the experts, as well as the rest of the evidence in the record, and there was sufficient evidence to support the finding that Jurgens did not prove that his carpal tunnel syndrome was caused by his employment with JBS

Swift. Accordingly, Jurgen's assignment of errors related to causal relationship between his injuries and his employment are without merit.

Jurgens also assigns that the workers' compensation court erred in finding that the record does not support an accident date of November 23, 2013, for his bilateral carpal tunnel syndrome. Because we have determined that the court did not err in finding that Jurgens failed to prove that his bilateral carpal tunnel syndrome was caused by his employment with JBS Swift, we need not address this remaining assignment of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Bolles v. Midwest Sheet Metal Co., Inc.*, 23 Neb. App. 269, 869 N.W.2d 717 (2015).

## CONCLUSION

We conclude that the compensation court did not err in finding that Jurgens failed to meet his burden of proof to establish that his bilateral carpal tunnel syndrome was caused by his employment with JBS Swift. Accordingly, the order dismissing his petition with prejudice is affirmed.

AFFIRMED.