GREGORY J. JORDAN, APPELLANT, v. MORRILL COUNTY AND
EMPLOYERS MUTUAL CASUALTY COMPANY, ITS WORKERS'
COMPENSATION INSURANCE CARRIER, APPELLEES.
603 N.W.2d 411

Filed December 17, 1999.    No. S-99-030.

Tylor J. Petitt, of The Van Steenberg Firm, for appellant.

Brenda S. Spilker and Timothy E. Clarke, of Baylor Evnen Curtiss Grimit & Witt, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Gregory J. Jordan appeals from an order entered by a review panel of the Nebraska Workers' Compensation Court which reversed the trial judge's determination that Jordan had sustained a repetitive trauma injury to his right shoulder for which benefits were payable under the Nebraska Workers' Compensation Act.

## SCOPE OF REVIEW

■ An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Variano v. Dial Corp.*, 256 Neb. 318, 589 N.W.2d 845 (1999).

■ In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Ideen v. American Signature Graphics*, 257 Neb. 82, 595 N.W.2d 233 (1999).

■ An appellate court is required to make its own determinations as to questions of law in workers' compensation cases. *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998).

## FACTS

In a prior workers' compensation case heard before the Honorable Paul E. LeClair, Jordan received an award against Morrill County for injuries to his cervical spine as the result of an accident on January 19, 1995. Jordan also alleged at the trial before Judge LeClair that in February or March 1996, he injured his right shoulder in a "work hardening" program that was required due to his injuries suffered in the January 1995 accident. Judge LeClair denied benefits for this alleged injury, finding that Jordan had failed to prove that his right shoulder problems were causally related to his accident and injury of January 19.

In the workers' compensation case at issue herein, the trial judge noted that Jordan had had three cervical spine operations, the last of which was on February 28, 1996. After this surgery, Jordan participated in a work hardening program at Scottsbluff Physical Therapy Associates. On March 28, Jordan reported neck and upper back pain while lifting. A summary dated April 19, 1996, noted persistent right upper back and neck pain which had been manageable. During a functional capacity assessment, Jordan felt pain on both sides of his neck and in his right shoulder.

Jordan returned to work in May 1996, and on June 13, he had an initial evaluation by Dr. Scott Primack. The evaluation was for a permanent impairment rating as a result of the cervical spine injury of January 19, 1995. Primack's letter of June 13, 1996, did not indicate any problems with Jordan's right shoulder.

On November 21, 1996, Jordan was examined by Dr. Hans Coester for problems with his right shoulder. At that time, Jordan reported that the shoulder pain was worse with activity. Jordan was then referred to Dr. Garth Nelson, an orthopedic surgeon, who examined Jordan on January 6, 1997. Nelson diagnosed Jordan's right shoulder problem as posttraumatic impingement syndrome with partial rotator cuff tears. In a letter dated March 24, Nelson stated:

Jordan clearly has a right shoulder impingement syndrome with partial thickness rotator cuff tears. The mechanism of his industrial injury January 19, 1995 is consistent with this condition, although I understand that most of his complaints at the time of injury and the months following were in reference to his neck and his left shoulder. The right shoulder injury may have been masked by the greater intense cervical pain which resolved after healing after his third cervical operation in February, 1996. . . . I am unaware of any nonindustrial causes of his right shoulder impingement and rotator cuff partial tears.

When Primack was asked to diagnose the cause of Jordan's impingement syndrome, he noted that Jordan had reported pain in his right arm when Primack examined him on June 13, 1996. At the time of that evaluation, Primack felt that Jordan's right shoulder problem was residual to a recent surgery. He then saw Jordan on October 23, and at that time, Jordan complained of problems with his right arm due to the vibration he experienced while operating a road grader. In a letter dated July 29, 1997, Primack stated:

I do not feel that the patient's impingement syndrome is from his initial injury from 1/19/95. More than likely, it is from driving his road gra[d]er with his arms at 90 degrees. Therefore, given the initial mechanism of injury and Mr. Jordan's follow-up examinations, his right shoulder problem is not related to his initial injury from January of 1995.

Jordan's amended petition alleged that in June 1996, he sustained a personal injury arising out of and in the course of his employment with Morrill County and that he was entitled to workers' compensation benefits. He asserted that he sustained an injury to his right shoulder while operating a road grader and that his employer had notice and knowledge of the accident and injury on or about June 1996. Jordan alleged that although he was still working, he continued to be treated by physicians, would need more medical treatment, and would be off work in the future. Morrill County and its workers' compensation insurance carrier, Employers Mutual Casualty Company (Employers Mutual), admitted Jordan's employment, but denied that the disability which Jordan claimed was the result of an accident or

occupational disease arising out of or in the course of his employment with Morrill County.

The trial judge found that Jordan had suffered an accident and injury to his right shoulder from constant repetitive trauma while operating a road grader during May 1996 and, in particular, on June 13, 1996. The trial judge also found that Jordan had missed no time from work although he needed surgery as recommended by Nelson and that Jordan was entitled to surgery for the right shoulder impingement syndrome and rotator cuff tears. The trial judge held that during the time Jordan was unable to work and was under a physician's care for treatment of his right shoulder, he was entitled to receive temporary disability benefits.

Morrill County and Employers Mutual appealed, alleging error in the finding that Jordan suffered an injury to his right shoulder from constant repetitive trauma while operating a road grader. A review panel of the Workers' Compensation Court found that the trial judge's determination that Jordan had sustained a repetitive trauma injury was clearly wrong and in error as a matter of law for two reasons.

First, the review panel found that the evidence before the trial judge showed that Jordan was undergoing a functional capacity evaluation for an unrelated injury on June 13, 1996, and that Primack, the physician examining Jordan, did not note until July 29, 1997, that Jordan had mentioned his right shoulder problems at the time of the evaluation. The review panel believed that the definition of a repetitive trauma accident requires that the medical attention being sought is for the condition for which compensation is being claimed. The review panel concluded that since the evidence would suggest that Jordan did not seek medical attention for his claimed right shoulder injury until October 1996, the trial judge's finding of a June 13, 1996, accident was clearly wrong. Second, the review panel noted the trial judge's finding that Jordan had missed no time from work and therefore concluded that Jordan had not experienced an interruption or discontinuation of employment.

In light of its specific finding that an essential element of an accidental injury had not been satisfied, the review panel concluded that the trial judge's finding that Jordan had suffered a work-related accident and injury to his right shoulder was in

error as a matter of law. Thus, the review panel ordered that the award entered June 10, 1998, be reversed and that the case be dismissed.

One of the judges on the review panel dissented, concluding that it made little practical or legal sense to require an injured worker to know the causation of his condition before seeking medical attention for that condition. The dissent opined that it was obvious that Primack was confused with respect to Jordan's condition and initially thought it was a residual effect of a previous and unrelated surgery.

Jordan timely appeals from the decision of the Workers' Compensation Court review panel.

## ASSIGNMENTS OF ERROR

Jordan assigns the following errors: (1) The review panel erred in reversing and dismissing the award entered by the trial judge on June 10, 1998; (2) the review panel erred in finding that the trial judge's determination that Jordan sustained a repetitive trauma injury on June 13, 1996, was clearly wrong and in error as a matter of law; (3) the review panel erred in ruling that the definition of a repetitive trauma accident requires that the medical attention being sought be for the condition for which the compensation is being claimed; and (4) the review panel erred in ruling that Jordan had not experienced an interruption or discontinuation of employment and thus had not met the "suddenly and violently" portion of the definition of an "accident."

## ANALYSIS

We focus on whether the review panel erred in concluding that the trial judge's finding that Jordan had sustained a repetitive trauma injury on June 13, 1996, was clearly wrong. As provided by Neb. Rev. Stat. § 48-179 (Reissue 1998), a workers' compensation review panel may reverse or modify the findings, order, award, or judgment of the original hearing only on the grounds that the judge was clearly wrong on the evidence or that the decision was contrary to law. Our review of the Workers' Compensation Court review panel is pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1998). If a Workers' Compensation Court review panel makes different findings of fact from those made

by the trial judge and there is evidence in the record before the trial judge to support the judge's findings, then the review panel has acted in excess of its powers. *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 513 N.W.2d 361 (1994). As *Pearson* points out, the review panel is not hearing or seeing witnesses and is not in the position of the finder of fact. The trial judge of the compensation court is the factfinding trial court, and the review panel is performing the first level of appellate review. *Larson v. Hometown Communications, Inc.*, 248 Neb. 942, 540 N.W.2d 339 (1995).

The evidence established that Jordan saw Primack on June 13, 1996, and that during the course of the examination, he mentioned to Primack that he was suffering from pain in his right shoulder. At trial, it was established that the pain required him to take more breaks and operate the road grader in different positions to relieve the pain and numbness in his arm. At times, the pain was nauseating.

Primack acknowledged that Jordan had reported problems with his right shoulder on June 13, 1996, but at that time, Primack felt that Jordan's problems were residual to his surgery. Primack later changed his opinion and concluded that the cause of those complaints was a repetitive trauma injury, as was alleged by Jordan.

■ Under the standard of review described herein, the review panel should not substitute its view of the facts for that of the trial judge if there is competent evidence in the record to support the trial judge's decision. Therefore, we conclude that the review panel acted in excess of its powers by substituting its view of the facts for that of the trial judge.

Jordan was required to seek medical attention for the condition for which compensation is being claimed, but he was not required to know the causation of his condition at the time that he went to see Primack. The evidence supports the trial judge's determination that Jordan told Primack he was having problems with his right shoulder when he was examined on June 13, 1996. The fact that Primack believed the shoulder problem was residual to Jordan's surgery does not equate with a determination that Jordan did not seek medical treatment for the condition for which he is now seeking compensation. The Nebraska

Workers' Compensation Act does not require an employee to know the causation of his condition at the time he sees a doctor for treatment.

We next address whether Jordan has proved the essential elements which will support his compensation award. This requires us to first consider whether the repetitive trauma injury is an accident or an occupational disease. We have stated that the condition resulting from cumulative effects of repeated work-related trauma has characteristics of both an accidental injury and an occupational disease. Generally, compensation for repetitive trauma injuries is to be tested under the statutory definition of an accident. See, *Schlup v. Auburn Needleworks*, 239 Neb. 854, 479 N.W.2d 440 (1992); *Vencil v. Valmont Indus.*, 239 Neb. 31, 473 N.W.2d 409 (1991); *Maxson v. Michael Todd & Co.*, 238 Neb. 209, 469 N.W.2d 542 (1991).

Under Neb. Rev. Stat. § 48-151(2) (Cum. Supp. 1996), an accident is defined as "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." An occupational disease is a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or employment and excludes all ordinary diseases of life to which the general public is exposed. § 48-151(3). If the injury is an occupational disease, the unique condition of the employment must result in a hazard which distinguishes it in character from employment generally. *Miller v. Goodyear Tire & Rubber Co.*, 239 Neb. 1014, 480 N.W.2d 162 (1992). We have recognized a time element for determining when an injury occurs with regard to occupational diseases. In *Hauff v. Kimball*, 163 Neb. 55, 77 N.W.2d 683 (1956), we stated that the time of the injury was to be determined at the moment the employee's disability first manifested itself. In *Osteen v. A. C. and S., Inc.*, 209 Neb. 282, 307 N.W.2d 514 (1981), we stated that the date of the injury was the date when the disability first occurred. However, whether the injury is considered to be an accident or an occupational disease, the employee must meet certain requirements in order to receive compensation for the injury.

In this case, Jordan alleged an injury as a result of an accident, and both the trial judge and the review panel treated the injury as an accident. Therefore, we consider the injury in the same manner as did the compensation court.

The first element of the statutory definition of an accident is that the injury must be "unexpected or unforeseen." The second element is that the accident must happen "suddenly and violently." The third element is that the accident must produce "at the time objective symptoms of an injury." *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982).

The first element is satisfied if the cause was of an accidental character or the effect was unexpected or unforeseen. *Schlup v. Auburn Needleworks, supra.* There is no evidence that Jordan knew the operation of heavy equipment could cause the injury he received. Therefore, the trial judge correctly determined that at least the first element had been satisfied.

The third element, that the accident produced objective symptoms, is satisfied if the symptoms manifest themselves according to the natural course of such things without any independent intervening cause. *Id.* Jordan testified that in June 1996, he had pain in his right shoulder, and his right arm started to go numb. This required him to take more breaks and to operate the road grader in different positions to alleviate the pain and numbness in his right arm. He stated that the pain made him nauseated at times. The trial judge was therefore correct in finding that the third element had been satisfied.

The review panel reversed the decision of the trial judge based on the second element of the statutory definition of an accident. The second element requires that the accident happen "suddenly and violently." A majority of the review panel concluded that the definition of a repetitive trauma accident requires that the medical attention sought be for the condition for which compensation is being claimed. The majority determined that Jordan had not experienced an interruption or discontinuation of employment and that, therefore, he failed to satisfy the second element of the statutory definition of an "accident."

The issue presented is whether an employee who sustains an injury during the course of employment must discontinue employment and seek medical treatment. Under existing

law, cessation of employment is a requirement regardless of whether the injury arises from an accident or an occupational disease. In either event, the injury must be such that the employee discontinues employment and seeks medical treatment. In *Sandel*, we referred to Arthur Larson's "The Law of Workmen's Compensation," noting that the injury must culminate at a point when the employee can no longer perform the required work. See 3 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 50.05 (1999).

Other jurisdictions which have treated repetitive trauma injuries as occupational diseases have also required that the employee become disabled. See, *Fruehauf Corp. v. Workmen's Comp. App. Bd.*, 68 Cal. 2d 569, 440 P.2d 236, 68 Cal. Rptr. 164 (1968); *Matter of Keefer v. Norton Co.*, 68 A.D.2d 961, 414 N.Y.S.2d 764 (1979). In some jurisdictions, the employee with an occupational disease is not considered injured until the disease causes a compensable injury requiring the employee to stop work. See, *Prater v. Thorngate, Ltd.*, 761 S.W.2d 226 (Mo. App. 1988); *Matter of Muniak v. ACF Ind., Inc.*, 7 A.D.2d 258, 182 N.Y.S.2d 539 (1959).

The injury must require the employee to discontinue employment and seek medical treatment. *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982). For purposes of the Nebraska Workers' Compensation Act, "suddenly and violently" does not mean instantaneously and with force, but, rather, the element is satisfied if the injury occurs at an identifiable point in time requiring the employee to discontinue employment and seek medical treatment. *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999).

Both accidents and occupational diseases have specific requirements which must be met in order for compensation to be received. One requirement is common to both. The injury must result in a disability, and the disability must be such that the employee can no longer perform the work required. The review panel correctly determined that since Jordan had not missed time from work, the second element had not been satisfied, and therefore, the trial judge's finding that Jordan suffered a work-related accident and injury to his right shoulder was in error as a matter of law.

 Some confusion exists regarding the phrase "interruption of employment." To the extent that *Maxson v. Michael Todd & Co.*, 238 Neb. 209, 469 N.W.2d 542 (1991), and *Vencil v. Valmont Indus.*, 239 Neb. 31, 473 N.W.2d 409 (1991), are interpreted to mean that interruption of employment means something other than discontinuation of employment, they are disapproved.

## CONCLUSION

For the reasons set forth herein, the judgment of the review panel reversing the decision of the trial judge is affirmed.

AFFIRMED.