Tolbert's cousin approached him and threatened to have Cayou "'jumped'" unless Cayou said that Tolbert was not the shooter. There was further evidence to show that the scenario as explained by Cayou was possible, given the housing arrangement at the Douglas County Correctional Center.

We review the denial of a motion for new trial for an abuse of discretion. The district court did not abuse its discretion in denying the motion for new trial in light of Cayou's second affidavit and explanation.

Tolbert's third assignment of error is without merit.

### CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.

―――――――――

BARBARA L. POTTER, APPELLEE, v. PATRICK S. McCULLA
AND HARTFORD UNDERWRITERS INSURANCE COMPANY,
APPELLEES, AND TRACY N. GARCIA, D.D.S., L.L.C.,
AND FIRSTCOMP INSURANCE COMPANY, APPELLANTS.

___ N.W.2d ___

Filed August 1, 2014.    No. S-13-944.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the trial judge who conducted the original hearing; the findings of fact of the trial judge will not be disturbed on appeal unless clearly wrong.

3. **Workers' Compensation: Proof.** To recover under the Nebraska Workers' Compensation Act, a claimant must prove by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment caused an injury which resulted in disability compensable under the act.

4. **Workers' Compensation: Expert Witnesses.** Unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert

opinion to establish the causal relationship between the employment and the injury or disability.

5. **Workers' Compensation.** The issue of causation of an injury or disability is one for determination by the trier of fact.

6. **Workers' Compensation: Appeal and Error.** An employee is entitled to compensation in Nebraska for personal injury caused by an accident arising out of and in the course of his or her employment. The phrase "arising out of" describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope or sphere of the employee's job.

7. **Workers' Compensation: Time: Proof: Words and Phrases.** The phrase "suddenly and violently" as used in Neb. Rev. Stat. § 48-151(2) (Reissue 2004) does not mean "instantaneously and with force," but, rather, requires only that the injury manifest at an identifiable point in time.

8. **Workers' Compensation: Time: Proof.** The identifiable point in time at which a repetitive trauma injury manifests is when there is a sudden result, characterized by an employee's discontinuing employment and seeking medical treatment, or when there is a sudden cause, such as a brief exposure to toxic fumes.

9. **Statutes: Judicial Construction: Legislature: Presumptions: Intent.** When judicial interpretation of a statute has not evoked a legislative amendment, it is presumed that the Legislature has acquiesced in the court's interpretation.

10. **Courts: Public Policy.** The doctrine of stare decisis is grounded on public policy and, as such, is entitled to great weight and must be adhered to unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so.

Appeal from the Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Affirmed.

Brynne E. Holsten and L. Tyler Laflin, of Engles, Ketcham, Olson & Keith, P.C., for appellants.

Joel D. Nelson, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee Barbara L. Potter.

Julie A. Jorgensen, of Morrow, Willnauer, Klosterman & Church, L.L.C., for appellees Patrick S. McCulla and Hartford Underwriters Insurance Company.

WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

STEPHAN, J.

Barbara L. Potter suffered a repetitive trauma injury as a result of her employment as a dental hygienist over a period

of more than 30 years. We conclude the Nebraska Workers' Compensation Court properly determined that her injury manifested itself on February 11, 2009, during Potter's employment with Dr. Tracy Garcia, and that Garcia and Garcia's workers' compensation carrier are liable for all of Potter's medical expenses and compensation benefits.

## FACTS

Potter began working as a dental hygienist in 1981. She has worked 3 to 4 days per week throughout her career. In late 2007 or early 2008, while working in a dental clinic for Dr. Patrick McCulla, Potter began experiencing pain in her neck. The pain was more intense toward the end of her workday, and Potter thought it was caused by the manner in which she positioned herself over patients while working. Potter saw 8 to 12 patients a day and spent the majority of her worktime with her head tilted and her arms raised.

On October 17, 2008, while still employed by McCulla, Potter sought medical treatment for her neck pain from Dr. Donald Walla. Walla prescribed oral steroids and physical therapy but did not assign any work restrictions. On October 22, Potter told McCulla about her symptoms and that she had sought medical treatment. She also told McCulla that Walla thought her neck problems were related to her work. On November 5, McCulla submitted a first report of injury to the workers' compensation court. Hartford Underwriters Insurance Company, McCulla's insurance carrier, accepted the injury claim and paid the medical expenses Potter incurred as a result of her neck pain.

Potter received medical treatment for her pain 12 times between October 17, 2008, and January 20, 2009. She sought this treatment during her off hours and days and did not miss any work during this time. On February 11, 2009, Potter's pain level became "excruciating" and she left work early to see Walla. This was the first time she missed work due to the pain. By this time, McCulla had sold the dental practice to Garcia. Potter's duties and hours remained the same during and after the ownership change. As Potter described it: "'I didn't switch. The dentists switched.'"

After February 11, 2009, Potter continued to receive medical treatment for her neck pain. In September 2010, she was examined by Dr. D.M. Gammel at the request of Garcia's insurance carrier, FirstComp Insurance Company (FirstComp). Gammel opined that the cause of her pain was a "pre-existing and progressive degenerative cervical disc condition" and that her awkward positions at work were not the cause of her condition. He expressly opined that her condition was "unrelated to a work related injury" and explained that continued work as a dental hygienist might "intensify her awareness of the symptoms" of her condition but was "not the cause of such." After receiving this report, FirstComp refused to pay for any additional medical care for Potter.

Potter left her employment with Garcia in June 2011 to accept a position as a dental hygienist with another clinic, where she worked 3 days a week. She continued to feel pain in her neck, and in June 12, 2012, she sought treatment with Dr. Phillip Essay of the Spine and Pain Center of Nebraska. In July 2012, Essay imposed permanent work restrictions of working only 3 days per week. Essay opined that Potter had "degenerative spondylosis in her cervical spine" that was "aggravated by the repetitive work duties and postures required in her work as a dental hygienist," although he acknowledged it was "impossible to state to any reasonable degree of medical certainty which of her positions as a dental hygienist caused what and/or when."

On June 4, 2012, Potter filed a petition in the Nebraska Workers' Compensation Court seeking benefits. That court found Potter had preexisting conditions in her neck which were aggravated by her duties as a dental hygienist and awarded benefits based on a 40-percent loss of earning capacity. It determined that the date of the injury was February 11, 2009, as that was the date she first missed work to be treated for her injury. Because Garcia was Potter's employer on the date of the injury, the court held Garcia and FirstComp liable for all of Potter's medical expenses and compensation benefits.

Garcia and FirstComp filed this timely appeal. We granted their petition to bypass the Nebraska Court of Appeals and moved the case to our docket.

## ASSIGNMENTS OF ERROR

Garcia and FirstComp assign that the compensation court erred in (1) finding Potter proved a causal connection between her injuries and her employment with Garcia and (2) determining the date of injury was February 11, 2009. With respect to the second assignment of error, Garcia and FirstComp ask this court to reconsider the test we apply when determining whether the statutory requirement of "suddenly and violently" in Neb. Rev. Stat. § 48-151(2) (Reissue 2010) is met as to repetitive trauma injuries.

## STANDARD OF REVIEW

[1] A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[1]

[2] In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the trial judge who conducted the original hearing; the findings of fact of the trial judge will not be disturbed on appeal unless clearly wrong.[2]

## ANALYSIS

### Causation

[3-5] To recover under the Nebraska Workers' Compensation Act,[3] a claimant must prove by a preponderance of the evidence that an accident or occupational disease arising out of

---

[1] *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013); *Smith v. Mark Chrisman Trucking*, 285 Neb. 826, 829 N.W.2d 717 (2013).

[2] *Hynes, supra* note 1; *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013).

[3] See Neb. Rev. Stat. §§ 48-101 to 48-1,117 (Reissue 2010, Cum. Supp. 2012 & Supp. 2013).

and occurring in the course of employment caused an injury which resulted in disability compensable under the act.[4] Unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert opinion to establish the causal relationship between the employment and the injury or disability.[5] The issue of causation of an injury or disability is one for determination by the trier of fact.[6]

Garcia and FirstComp allege that Potter failed in her burden of proof because although she "establish[ed] that she suffered from an aggravation of a pre-existing condition and that the same was related to her work as a dental hygienist over her 32 year career," she did not present sufficient evidence "linking her alleged injury and disability to her employment with . . . Garcia."[7]

[6] But Potter did not have to specifically prove that her injury arose out of her employment with Garcia. An employee is entitled to compensation in Nebraska for personal injury caused by an accident arising out of and in the course of his or her employment.[8] The phrase "arising out of" describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope or sphere of the employee's job.[9] In *Tomlin v. Densberger Drywall*,[10] the

---

[4] § 48-101; *Risor v. Nebraska Boiler*, 277 Neb. 679, 765 N.W.2d 170 (2009).

[5] See *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991). See, also, *Money v. Tyrrell Flowers*, 275 Neb. 602, 748 N.W.2d 49 (2008); *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998).

[6] See, *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002); *Liberty v. Colonial Acres Nsg. Home*, 240 Neb. 189, 481 N.W.2d 189 (1992).

[7] Brief for appellants at 17.

[8] § 48-101.

[9] See, *Zoucha v. Touch of Class Lounge*, 269 Neb. 89, 690 N.W.2d 610 (2005); *Tomlin v. Densberger Drywall*, 14 Neb. App. 288, 706 N.W.2d 595 (2005).

[10] *Tomlin, supra* note 9.

Court of Appeals addressed a similar situation. There, the employee had worked for his current employer for 2 years, but had worked as a drywaller for 30 years. The medical evidence established that the cumulative repetitive task of drywalling was the cause of the injury. The Court of Appeals held:

> Because [the medical doctors] opined that overhead work and heavy lifting contributed . . . to [the] shoulder injury, and because [the employee] testified that he performed lots of overhead work and heaving lifting at [his current employer], the trial court did not err in determining that [the] injury resulted from the risks arising within the scope or sphere of his [current] employment . . . , i.e., overhead work and heaving lifting.[11]

A similar analysis applies here. Essay's opinion established a causal relationship between Potter's work as a dental hygienist and her injury. It is undisputed that she worked as a dental hygienist for Garcia. Thus, Potter presented competent evidence that her injury arose from the risks arising within the scope or sphere of her employment, even if she cannot pinpoint that it arose directly as a result of her employment with Garcia. The compensation court did not err in finding there was a causal relationship between the injury and Potter's employment as a dental hygienist.

## DATE OF INJURY

Potter's injury was caused by repetitive trauma. In Nebraska, the compensability of repetitive trauma injuries is tested under the statutory definition of accident.[12] An accident is "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury."[13] Here, both parties agree that the injury to Potter was "unexpected or unforeseen" and that it

---

[11] *Id*. at 297, 706 N.W.2d at 605.

[12] E.g., *Swoboda v. Volkman Plumbing*, 269 Neb. 20, 690 N.W.2d 166 (2004).

[13] § 48-151(2).

produced "objective symptoms of an injury." They also agree that it happened "suddenly and violently." However, they dispute *when* it happened "suddenly and violently." Resolution of this issue is important, for the date on which the accident happens "suddenly and violently" is relevant to many issues in a workers' compensation case, including when the statute of limitations begins to run, at what rate the employee's average weekly wage should be calculated, and which employer or insurer is liable to the employee.[14] The latter is particularly relevant to the instant case.

[7] Years ago, we recognized that while the language of our statute requiring an accident to happen "'suddenly and violently'" was "quite precise and clear," "the realities of life do not always provide us with such clear-cut recorded events from which we may decide whether an accident . . . has occurred."[15] We further recognized that this is particularly so when the injury is caused by repetitive trauma. We explained:

> [T]he nature of the human body being such that it is, not all injuries to the body are caused instantaneously and with force, but may indeed be nevertheless suddenly and violently, even though they have been building up for a considerable period of time and do not manifest until they cause the employee to be unable to continue his or her employment.[16]

We have thus reasoned that the phrase "'suddenly and violently'" as used in § 48-151(2) does not mean "'instantaneously and with force,'" but, rather, requires only that the injury manifest at an identifiable point in time.[17]

[8] Since at least 1999, we have reasoned that the identifiable point in time at which a repetitive trauma injury manifests is when there is a sudden result, characterized by

---

[14] See 3 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 50.05 (2014).

[15] *Sandel v. Packaging Co. of America*, 211 Neb. 149, 156, 317 N.W.2d 910, 915 (1982).

[16] *Id.* at 160, 317 N.W.2d at 917.

[17] *Id.* at 158, 317 N.W.2d at 916. See, e.g., *Risor, supra* note 4.

an employee's discontinuing employment and seeking medical treatment.[18] We later clarified that the identifiable point in time can also be when there is a sudden cause, such as a brief exposure to toxic fumes.[19] Only the test used to identify the point in time when a sudden result occurs is at issue in this case.

Garcia and FirstComp argue that our interpretation of "suddenly and violently" as requiring an employee to both seek medical attention and discontinue employment has "morphed" the "plain, ordinary, and popular meaning of the phrase 'suddenly and violently' and no longer accomplishes the purpose and intent of the Nebraska Workers' Compensation Act."[20] We do not understand this argument to be that we should read "suddenly and violently" as meaning only "instantaneously and with force."[21] Instead, Garcia and FirstComp are simply asking that we apply a different test when undertaking the difficult task of determining the identifiable point in time that a repetitive trauma injury suddenly results or manifests. They argue that the part of our current test which requires discontinuation of employment "causes harm"[22] to part-time workers or night-shift workers who, realizing they have suffered a work-related injury and need medical treatment, seek that treatment during nonwork hours. They also argue it is "unjust"[23] to subsequent employers to fix the date of injury based on the date employment is discontinued when the symptoms of the injury surfaced and the

---

[18] See *Jordan v. Morrill County*, 258 Neb. 380, 603 N.W.2d 411 (1999); *Fay v. Dowding, Dowding*, 261 Neb. 216, 623 N.W.2d 287 (2001); *Vonderschmidt v. Sur-Gro*, 262 Neb. 551, 635 N.W.2d 405 (2001); *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005); *Swoboda, supra* note 12; and *Risor, supra* note 4.

[19] *Swoboda, supra* note 12.

[20] Brief for appellants at 24-25.

[21] See *Sandel, supra* note 15, 211 Neb. at 156, 317 N.W.2d at 915.

[22] Brief for appellants at 27.

[23] *Id*. at 22.

employee sought medical treatment during his or her tenure with a previous employer.

We acknowledge that other jurisdictions apply different tests when determining the identifiable point in time at which a repetitive trauma injury suddenly results or manifests. Garcia and FirstComp urge us to adopt the test applied by Iowa. That jurisdiction finds that a repetitive trauma injury manifests when both the fact of the injury and the causal relationship of the injury to the claimant's employment are plainly apparent to a reasonable person.[24] In *Meyer v. IBP, Inc.*,[25] the court explained that the test was employed in an effort to determine "'the date on which disability manifests itself.'" It explained that in its view, "'"[m]anifestation"'" was "'best characterized'" based on the articulated test.[26] It noted, however, that factors to be considered in determining when a repetitive trauma injury manifests itself under that test included "'absence from work because of inability to perform'" and "'the point at which medical care is received.'"[27] Because these are precisely the factors considered by this court, the test is not entirely different from ours. And we note that Iowa's workers' compensation statute does not include the "suddenly and violently" language from which our test was derived.[28]

Oklahoma applies a test very similar to Iowa's and finds that a repetitive trauma injury manifests when the worker becomes aware of the injury and its job relatedness.[29] So does Kentucky, which finds a gradual injury becomes manifest when the worker has knowledge of the harmful change

---

[24] *Herrera v. IBP, Inc.*, 633 N.W.2d 284 (Iowa 2001).

[25] *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 221 (Iowa 2006), quoting 3 Larson & Larson, *supra* note 14.

[26] *Id.*, quoting *Oscar Mayer Foods Corp. v. Tasler*, 483 N.W.2d 824 (Iowa 1992).

[27] *Id.*

[28] See Iowa Code Ann. § 85.3(1) (West 2009).

[29] *Centrilift v. Evans*, 915 P.2d 391 (Okla. App. 1995).

and knows it is caused by the work.[30] Pennsylvania holds that the date of diagnosis of an injury caused by repetitive trauma is the date of the accident.[31] All of these jurisdictions are attempting to answer the same difficult question—at what point does an injury caused by repetitive trauma manifest itself?

The test we have adopted, that a repetitive trauma injury manifests on the date that the employee has both sought medical treatment and missed work due to the injury,[32] has certain advantages. First, it is based on objective criteria—the date the employee seeks medical treatment and the date the employee has to discontinue or miss work. Under this test, we need not engage in a subjective analysis of when an injury or its relation to the employment would be "plainly apparent" to a "reasonable person."[33] But perhaps more important, the requirement in our test that the employee miss or discontinue employment is reasonably related to a determination of the time when the injury manifests itself in disability. Both before and after an employee's maximum medical improvement, an employee's disability is determined by the employee's diminution of employability or impairment of earning power or earning capacity.[34] Thus, even if an employee is experiencing pain associated with his or her employment and seeks medical treatment for that pain, no disability is manifested until there is a diminution of employability—and that reasonably can only occur when an employee's injury interferes with his or her ability to perform the requirements of the job. The point at which an employee has to miss or discontinue work because of the injury is thus a reasonable standard of disability manifestation.

---

[30] *Brummitt v. Southeastern Ky. Rehabilitation*, 156 S.W.3d 276 (Ky. 2005).

[31] *Piad Corp. v. W.C.A.B. (Moskyok)*, 761 A.2d 640 (Pa. Commw. 2000).

[32] See cases cited *supra* note 18.

[33] Compare, *Meyer, supra* note 25; *Herrera, supra* note 24.

[34] *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013).

In addition, the bright-line rule we apply has the dual advantage of simplicity and consistency. It is fair to employees, because a date of injury is conclusively established once symptoms become so severe that work is missed. In this respect, we note that at least two jurisdictions have questioned the wisdom and fairness of the Iowa test, or tests similar to it, from the perspective of the injured employee. As noted, Iowa holds that the date of injury is the date when both the injury and its relation to the employment are "plainly apparent" to a "reasonable person."[35] But this can be unfair to employees because

> [b]y their very nature, repetitive-trauma injuries may take years to develop to a point of severity precluding the employee from performing in the workplace. An employee who discovers the onset of symptoms and their relationship to the employment, but continues to work faithfully for a number of years without significant medical complications or lost working time, may well be prejudiced if the actual breakdown of the physical structure occurs beyond the period of limitation set by statute.[36]

These same jurisdictions also reason that fixing the date of injury for a repetitive trauma injury prior to the date the employee has to miss work is illogical, as "it cannot be presumed the initial condition will necessarily degenerate to a point at which it impairs the employee's ability to perform the duties to which he is assigned."[37]

We acknowledge that the rule we apply may seem unfair to some employers (or, more aptly, their insurance carriers) under circumstances similar to the instant case, where symptoms and medical treatment occur while work is being performed for one employer but no work is missed until work is being performed for another employer. But due to

---

[35] See, *Meyer, supra* note 25; *Herrera, supra* note 24.

[36] *Oscar Mayer & Co. v. Industrial Comm.*, 176 Ill. App. 3d 607, 611, 531 N.E.2d 174, 176, 126 Ill. Dec. 41, 43 (1988). See *Treaster v. Dillon Companies, Inc.*, 267 Kan. 610, 987 P.2d 325 (1999).

[37] *Id.*

the progressive nature of repetitive trauma injuries, the test employs a "necessary legal artifice . . . in order for repetitive trauma cases to be manageable within the statutory framework of an accident."[38]

[9] In 1991, four members of this court noted that modification of the Nebraska Workers' Compensation Act to better address the issues involved in repetitive trauma cases is a legislative function, not a judicial one.[39] And as we noted in a 2003 case in which we declined to overrule the same line of precedent challenged here:

> When judicial interpretation of a statute has not evoked a legislative amendment, it is presumed that the Legislature has acquiesced in the court's interpretation. . . . The Legislature has not only acquiesced in our interpretation of Neb. Rev. Stat. § 48-151 . . . regarding repetitive trauma injuries, but has declined the express invitation of a majority of this court to consider and amend our interpretation.[40]

Eleven years later, that statement is still true.

[10] In sum, the test we apply to determine when a repetitive trauma injury occurs "suddenly and violently" is neither inconsistent with the statutory language nor is it unfair or unjust. While the test may not be perfect, we are not persuaded that the more subjective approach taken by Iowa and other jurisdictions is better. The doctrine of stare decisis is grounded on public policy and, as such, is entitled to great weight and must be adhered to unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so.[41] We therefore decline Garcia and FirstComp's invitation to overrule our precedent. The compensation court

---

[38] *Tomlin, supra* note 9, 14 Neb. App. at 301, 706 N.W.2d at 608.

[39] *Vencil v. Valmont Indus.*, 239 Neb. 31, 473 N.W.2d 409 (1991) (Caporale, J., concurring; Boslaugh, White, and Fahrnbruch, JJ., join), *disapproved on other grounds, Jordan, supra* note 18.

[40] *Dawes, supra* note 18, 266 Neb. at 539-40, 667 N.W.2d at 182 (citation omitted).

[41] *Dawes, supra* note 18.

did not err in determining that the date of injury was February 11, 2009, as that was the date on which Potter first missed work due to her pain, even though she had previously sought medical treatment.

## CONCLUSION

For the foregoing reasons, the decision of the compensation court is affirmed.

AFFIRMED.

HEAVICAN, C.J., not participating.