IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

FRINK V. LINCOLN ELECTRICAL SYSTEM

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BRAD FRINK, APPELLANT,

V.

LINCOLN ELECTRICAL SYSTEM, APPELLEE.

Filed November 1, 2016.    No. A-16-160.

Appeal from the Workers' Compensation Court: DANIEL R. FRIDRICH, Judge. Affirmed.

Jon Rehm, of Rehm, Bennett & Moore, P.C., L.L.O., for appellant.

Jeffery R. Kirkpatrick, Lincoln City Attorney, and Margaret Maloney Blatchford for appellee.

INBODY and PIRTLE, Judges, and MCCORMACK, Retired Justice.

INBODY, Judge.

## INTRODUCTION

Brad Frink appeals from the Nebraska Workers' Compensation Court's dismissal of his petition. He contends the trial court erred in determining he did not have an accident occurring in a sudden and violent manner as required by Neb. Rev. Stat. § 48-151(2) (Reissue 2010). For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

On August 29, 2013, Frink filed a petition alleging he was entitled to workers' compensation benefits because on or about September 13, 2011, he suffered an accident and repetitive injury to his hands and wrists causing bilateral carpal tunnel syndrome, arising out of and in the course of his employment with Lincoln Electrical System (LES). The matter came on for trial on December 22, 2015.

- 1 -

The evidence adduced at trial established that around 1985, Frink became employed at LES. Frink works as an equipment operator and ground man, requiring the need to operate heavy equipment. On September 13, 2011, Frink filed an employee injury report with LES, stating he had carpal tunnel syndrome on both hands as a result of excessive use on backhoe levers. Despite filing the injury report, Frink worked a 10-hour shift on September 13. At trial, Frink alleged the injury's symptoms caused him to wake up at night and that he would regularly shake his hands when they became numb. Frink sought medical treatment from Dr. Dolf Ichertz on November 16, and also Dr. Daniel B. Cullan II on February 13, 2012, and November 3, 2014. Frink testified that he continued to perform his regular duties between the doctor's appointments.

Frink continued to work full-time without restrictions until January 27, 2015, when he obtained right shoulder surgery from Dr. Pat Clare to correct an unrelated, nonwork injury. The shoulder surgery caused Frink to remain away from work until, at least, July 27. During the shoulder surgery recovery, Frink scheduled his carpal tunnel surgeries. Frink had right carpal tunnel surgery on March 23, 2015, and left carpal tunnel surgery on April 13. Frink testified he had the surgeries during this time because he was already off work as a result of his shoulder surgery and did not want to use additional sick time. Dr. Cullan released Frink on May 6 for the right wrist and May 27 for the left wrist. On August 3, 2015, Frink returned to work full time without any restrictions.

The trial court dismissed Frink's petition on the grounds that he alleged an injury from a repetitive trauma and failed to meet the elements of an accident under § 48-151(2), as he did not satisfy the element that the injury happen "suddenly and violently." The trial court determined that Frink did not discontinue his employment or seek medical treatment for a compensable injury. The trial court noted that Frink failed to present any evidence that he had to miss work due to the effects of his carpal tunnel syndrome or as a result of his carpal tunnel surgeries. Frink has timely appealed to this court.

ASSIGNMENT OF ERROR

Frink assigns the trial court erred in determining he did not have a sudden and violent injury as required by § 48-151(2).

STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014), an appellate court may modify, reverse, or set aside a decision from the compensation court only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Nichols v. Fairway Bldg. Prods.*, 294 Neb. 657, 884 N.W.2d 124 (2016). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the trial judge who conducted the original hearing; the findings of fact of the trial judge will not be disturbed on appeal unless clearly wrong. *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013). An

appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Interiano-Lopez v. Tyson Fresh Meats*, 294 Neb. 586, 883 N.W.2d 676 (2016).

ANALYSIS

Frink contends that the trial court erred in determining he did not have an accident occurring in a sudden and violent manner as required by § 48-151(2).

Under § 48-151(2), an injured worker must satisfy three elements to prove an injury is the result of an accident: (1) The injury must be unexpected or unforeseen, (2) the accident must happen suddenly and violently, and (3) the accident must produce at the time objective symptoms of injury. *Risor v. Nebraska Boiler*, 277 Neb. 679, 765 N.W.2d 170 (2009). The Nebraska Workers' Compensation Act places the burden of proof on the injured worker claimant "to establish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment." § 48-151(2).

The requirement that an accident occur suddenly and violently does not mean that it occur instantaneously, but is satisfied if the injury occurs at some identifiable point in time, requiring the employee to discontinue employment and seek medical treatment. *Potter v. McCulla*, 288 Neb. 741, 851 N.W.2d 94 (2014). The Nebraska Supreme Court has recognized that, due to the human body's nature, not all body injuries are caused instantaneously and with force, but may nevertheless occur suddenly and violently, even though the injuries have been building up for a considerable time period and do not manifest themselves until they cause the employee to be unable to continue employment. *Potter v. McCulla*, *supra*, quoting *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982).

If an employee suffers a repetitive trauma injury but never stops work and never seeks medical treatment, the employee has not established an identifiable point in time when an accident occurred for purposes of defining the second element, "suddenly and violently." *Vonderschmidt v. Sur-Gro*, 262 Neb. 551, 635 N.W.2d 405 (2001). Even if an employee is experiencing pain associated with employment and seeks medical treatment for that pain, no disability is manifested until there is employability diminution, which can only occur when an employee's injury interferes with the ability to perform the job requirements. *Potter v. McCulla, supra*.

In Frink's brief, he acknowledges Nebraska jurisprudence necessity to "discontinue employment," but requests a liberal construction to allow injured employees to seek medical treatment for compensable injuries at the same time they treat non-compensable injuries. However, Frink's request is misplaced, as Frink did not discontinue employment until years after he filed his initial employee injury report and never discontinued employment as a result of the carpal tunnel syndrome. The evidence adduced at trial established that Frink filed an employee injury report with LES on September 13, 2011, and continued to work full time without restrictions until January 27, 2015, when he obtained right shoulder surgery to correct an unrelated, nonwork injury. Frink did not provide any evidence suggesting that the carpel tunnel syndrome was a disability manifesting employability diminution or that the injury interfered with Frink's ability to perform the job requirements. The evidence at trial only suggested that Frink stopped work in order to correct his unrelated, nonwork injury. Although Frink recognized the opportunity to treat the bilateral carpal tunnel syndrome while concurrently recovering from shoulder surgery, Frink never

missed any work as a direct result of his carpal tunnel syndrome or his carpal tunnel surgeries. Therefore, we find that the trial court did not err in dismissing Frink's petition and finding that he did not have a sudden and violent injury as required by § 48-151(2).

## CONCLUSION

The trial court's order of dismissal of Frink's petition is affirmed.

AFFIRMED.